IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:09-CV-44-D

| | |
|---|---|
| FREDRICK F. CHANCY, ) | |
| ) | |
| Claimant/Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Fredrick F. Chancy ("Claimant") seeks judicial review of the Commissioner's denial of his applications for disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). After a thorough review of the record and consideration of the briefs submitted by counsel, the Court recommends denying Claimant's Motion for Judgment on the Pleadings [DE-13] and granting the Commissioner's Motion for Judgment on the Pleadings [DE-17].

## STATEMENT OF THE CASE

On January 31, 2006, Claimant filed his applications for DIB and SSI, alleging disability beginning on August 15, 2001. (R. 80.) Claimant alleged disability due to degenerative disease of the cervical spine, back pain, and problems with his legs and hands. (R. 84.) His applications were denied initially, and upon reconsideration. (R. 19-20, 206-07.) Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on May 10, 2007. (R. 209-39.) The ALJ issued a decision denying Claimant's application on September 21, 2007. (R. 9-18.)

The Appeals Council denied Claimant's request for review on January 30, 2009, (R. 2-4) rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. The Standard of Review and Social Security Framework

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. Walls, 296 F.3d at 290; 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. Walls, 296 F.3d at 290. Thus, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments that significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se. If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity ("RFC") is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry his burden through the testimony of a vocational expert ("VE"), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges the following errors: (1) the ALJ failed to consider all of Claimant's severe impairments; (2) the RFC is not supported by substantial

evidence, (3) the ALJ improperly evaluated the treating physician's opinion, and (4) the ALJ failed to fully develop the record. Cl.'s Mem. at 1-2.

## II. The ALJ's Findings

The ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920. (R. 23-32.) The ALJ first found that Claimant had not engaged in substantial gainful activity since August 15, 2001, the alleged onset date. (R. 11); see 20 C.F.R. §§ 404.1520(b) & 416.920(b). The ALJ then proceeded to step two and found that Claimant suffered from the severe impairments of back pain, status-post surgery for fractured right femur, and degenerative disc disease of the cervical spine. (Id.); see 20 C.F.R. §§ 404.1520(c) & 416.920(c). However, at step three the ALJ determined that Claimant's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 12); see 20 C.F.R. §§ 404.1520(d)-(e) & 416.920(d)-(e). Next, the ALJ determined – based on all the evidence in the record, including medical records, and Claimant's subjective complaints – that Claimant had the RFC to engage in the full range of medium work. (R. 12-17); see 20 C.F.R. §§ 404.1520(e) & 416.920(e). At step four, the ALJ found that Claimant was unable to perform his past relevant work as a sprayer/sander of church furniture. (R. 17); see 20 C.F.R. 404.1565 & 416.965. At step five, the ALJ determined that based on Claimant's age, education, work experience and RFC, he could perform other jobs that exist in significant numbers in the national economy. (R. 17-18); see 20 C.F.R. §§ 404.1560(c) & 416.960(c). As a result, the ALJ found that Claimant was not

4

under a "disability," as defined in the Social Security Act, from August 15, 2001, through the date of his decision. (R. 18); see 20 C.F.R. §§ 404.1520(g) & 416.920(g).

## III. The Administrative Hearing

Claimant testified at his administrative hearing held on May 10, 2007, to the following: (R. 211-39.) He was 55 years old at the time of the hearing. (R. 212.) He attended school through the eighth grade, and did not receive a GED. (Id.) He is not able to read and write well. (R. 213.) He lives by himself and has a driver's license. (R. 212.) He drives on occasion, when he needs to go uptown or get his mail. (R. 213.) When he took his driver's license test, some of the questions had to be read to him because he had trouble understanding them. (R. 213-14.) Claimant cannot read the headlines of a newspaper. (R. 214.) He can write his name and do simple mathematics, like making change. (Id.)

The last job that Claimant held was with Kivett's Incorporated in Lisbon, North Carolina, a church pew construction company. (Id.) He was employed there for seventeen years. (R. 216.) He worked as a chemical sprayer of the wood. (Id.) The spray-can weighed about eight pounds, and Claimant had to be on his feet all day. (R. 214-15.) In addition, Claimant worked as a sander of the wood, which required him to pick up the wooden boards. (R. 215.) The boards weighed between five and six pounds. (Id.) Claimant stopped working because of pain in his back and legs, and has not worked since. (R. 216.) Claimant was in a car accident in May 2004, which caused him additional back pain. (R. 233.)

5

Claimant continues to suffer back pain. (Id.) A magnetic resonance imaging ("MRI") showed that he had disc bulging and facet arthritis and a neurosurgeon concluded that Claimant had multilevel lumbar spondylosis. (R. 236.) His lower back is painful all the time, including when he sits and lies down. (R. 221.) His hands and legs sometimes feel numb. (R. 223.) He has a problem with his cervical spine, which causes severe neck pain. (R. 217, 218.) He has trouble looking down or turning his head left or right. (R. 217.) If Claimant sits and holds his head with his hands, then the pain diminishes. (R. 218.) He cannot stay in any one position for an extended period of time because of the constant pain. (R. 224.) He cannot reach down to tie his shoes because of his back and neck pain. (R. 230.)

Claimant suffers from shortness of breath and heart pain. (R. 226.) He also has high blood pressure. (Id.) He takes blood pressure medication which is not successful in keeping his blood pressure in check. (R. 227.)

Claimant's doctor prescribed medication for the pain, which he is supposed to take three or four times a day. (R. 218, 219.) The medication alleviates a lot of the pain but does not take it completely away. (R. 222.) One side effect is that the medication makes him slur his speech. (R. 219.) Claimant also cannot drive for two or three hours after he takes his pain medication because it makes him dizzy. (Id.) He uses a cane when walking to take some of the pressure off his legs. (R. 222.) He can stand for five or ten minutes before he starts to feel pain. (R. 224). If he stands for any length of time, his legs will give way and he will fall. (Id.) Claimant goes to physical therapy approximately twice a week. (R. 225.) He does not derive much benefit from the

therapy. (Id.) Claimant elected not to have back surgery because his treating physician told him that the neurosurgeon he saw concluded that Claimant did not need surgery and should continue with his medication. (R. 237.)

Claimant has an aide that comes to his home five days a week to help him, which was prescribed by his doctor. (R. 220, 221.) At the time of the hearing, she had been coming to his home for three months. (R. 230.) She cleans the house, cooks all of Claimant's meals, does his laundry and helps Claimant bathe. (R. 220.) The aide also buys Claimant groceries. (R. 224.) She stays approximately three hours a day. (R. 221.) Claimant's sister also helps him. (R. 224.) Claimant does none of the cooking or cleaning in his home. (R. 227.)

Claimant usually attends church every week. (R. 228.) He has trouble sitting through the entire sermon. (Id.) The preacher picks Claimant up to go to church so he does not drive there. (R. 229.)

## IV. Claimant's Arguments

### A. The ALJ Considered all of Claimant's Severe Impairments

Claimant first argues that the ALJ failed to consider all of his severe impairments. Specifically, Claimant argues that the ALJ failed to consider chronic obstructive pulmonary disease ("COPD"), which results in breathing difficulties, as a severe impairment at step two of the sequential analysis. Cl.'s Mem. at 4. At step two, an ALJ must determine whether a claimant's impairments, individually or in combination, are "severe." 20 C.F.R. §§ 404.1523, 416.923. In order for an impairment to be considered

7

"severe" it must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Here, the ALJ noted that Claimant's treating physician, Dr. Richard G. Berry, in a March 2007 report, had been following Claimant since October 2006 for stage II COPD. (R. 15.) The ALJ also noted that Dr. Berry reported that Claimant's "major problem was low back pain that caused difficulty standing, squatting, and sitting." (Id.) Dr. Berry discussed Claimant's COPD, stating that he takes medication for it and that he shows moderate obstruction consistent with a 25% reduction in lung function. (R. 104-05.) At his hearing before the ALJ, Claimant noted that he had difficulty breathing on occasion. "I just be sitting and sometimes I can breathe good and sometimes I can't . . . ." (R. 226.) Claimant attributed his difficulty in breathing to air quality and changes in weather. (Id.)

The record does not indicate that Claimant's ability to do basic work activities has been significantly limited by COPD. He testified that he has trouble breathing only "sometimes." (R. 226.) In addition, in a letter to Claimant's attorney, Dr. Berry concluded that Claimant was disabled "based on the MRI results, his back pain and the fact that the medication he is taking can sometimes cause drowsiness . . . ." (R. 105.) Dr. Berry noted that Claimant's COPD "complicates the picture" but did not attribute functional limitations based on Claimant's difficulty in breathing or shortness of breath. (R. 104-05.) As demonstrated by references in his decision, the ALJ considered COPD. However, because there were no medical documents establishing the severity of

8

Case 7:09-cv-00044-D Document 23 Filed 03/25/10 Page 8 of 16

Claimant's COPD and because there were no functional limitations attributed to COPD, the ALJ did not err by failing to consider it a severe impairment.

## B. The ALJ Sufficiently Determined Claimant's RFC

Claimant argues that the ALJ erred in concluding that he had the RFC to perform a full range of medium work and that the ALJ failed to explain how the medical evidence supported such a finding. The Court disagrees.

In determining his RFC, the ALJ considered all of Claimant's symptoms, including his testimony regarding pain, to the extent that such symptoms were consistent with objective medical and other evidence. (R. 13.) The ALJ noted his reliance on the requirements of 20 C.F.R. §§ 404.1529, 416.929 and Social Security Rulings ("SSRs") 96-4p and 96-7p, in reviewing Claimant's alleged symptoms. Additionally, the ALJ considered opinion evidence in accordance with 20 C.F.R. §§ 404.1527, 416.927 and SSRs 96-2p, 96-5p, and 96-6p.

Specifically, the ALJ reviewed the medical evidence, and noted discrepancies or problems with the records. For instance, the ALJ first noted that although Claimant alleged an onset date of 2001, there was no clinical evidence submitted showing that Claimant received medical care prior to 2004. (R. 14.) In 2004, Claimant was seen in the emergency room for back and neck pain resulting from a motor vehicle accident. (Id.) At that time, Claimant reported no past medical history and stated he was taking no medications. (Id.) A chiropractor that Claimant saw following this accident noted that Claimant was self-employed and was able to work while under his care and that he had recovered from the accident with no indication of permanency. (Id.) In 2006,

9

Claimant underwent a consultative examination by Dr. Indumathi Bendi due to back and neck pain, but there was no spinal tenderness, bilateral straight leg raising was negative, and flexation of the thoracolumbar spine was normal. (R. 15.) The ALJ considered x-rays of Claimant's right leg, which showed a healed fracture of the right femur and no bony or soft tissue abnormalities. (Id.) Accordingly, contrary to Claimant's assertion, the ALJ did more than merely recite the medical evidence. He also noted inconsistencies, or parts of the medical record that showed that Claimant was not so severely impaired that he could not perform a full range of medium work. See Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989) (noting that an ALJ must consider a claimant's impairments in concert to determine whether the claimant is disabled under the regulations).

In addition, the ALJ reviewed Claimant's hearing testimony, in which he alleged debilitating neck, back and leg pain. (R. 14.) However, the ALJ noted that in 2006 Claimant reported he lived alone, dressed, ate, prepared meals daily, cleaned, did laundry weekly, drove, grocery shopped twice weekly, paid bills, watched television, talked with others, prayed and went to church on a regular basis. (R. 15.) In addition, the ALJ noted that Dr. Berry's opinion, in which he concluded that Claimant was disabled, was inconsistent with other evidentiary evidence and was not supported by findings of examinations, MRI scans or underlying medical records. (R. 16.) Finally, although Claimant testified that he used a cane, there was no indication from the medical record that use of a cane was prescribed by a physician. (Id.)

10

Case 7:09-cv-00044-D   Document 23   Filed 03/25/10   Page 10 of 16

Accordingly, the ALJ relied on the conclusion by a state agency medical consultant who concluded that Claimant could perform a full range of medium work. (R. 17.) This included the ability to lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk six hours in an eight hour work day, sit six hours in an eight hour workday, and have unlimited ability to push and/or pull with the extremities. (R. 17.) Generally, opinions by treating sources are afforded greater weight than that of state agency consultants. See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); see also infra section C. However, as explained more fully below, the ALJ explained that the opinion by the state agency physician was supported by evidence in the record, while Dr. Berry's opinion was inconsistent with medical evidence or unsupported by medical records. (R. 16-17.) Here, the ALJ sufficiently considered the medical evidence, citing to the lack of records, describing the medical evidence and noting the medical findings that supports his RFC assessment. See generally DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (concluding that an ALJ must analyze the medical evidence in determining an appropriate RFC). Moreover, the ALJ considered Claimant's hearing testimony and noted where it was inconsistent with the medical records. Id. Accordingly, it is the Court's opinion that the ALJ's finding that Claimant could perform a full range of medium work is supported by substantial evidence.

### C. The ALJ Properly Considered the Opinion of Claimant's Treating Physician

Under the Commissioner's regulations, controlling weight is given to the opinion of a treating source on the issues of the nature and severity of an impairment if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with other substantial evidence. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1995). Moreover, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209 (4th Cir. 1999) (unpublished opinion) (internal quotations omitted). Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is one reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

Claimant's treating physician, Dr. Berry, submitted a letter to Claimant's counsel stating that Claimant suffers from high blood pressure and stage II COPD. (R. 104.) In addition, Dr. Berry stated that Claimant's major problem was his low back pain. (Id.) He referenced an MRI of Claimant's cervical spine that showed severe deformity and also records from Dr. George Huffmon, a spine specialist, who diagnosed Claimant with multilevel lumbar spondylosis and recommended him for surgery. (Id.) Dr. Berry opined that Claimant was disabled and could not engage in any gainful employment. (R. 105.)

The ALJ gave Dr. Berry's opinion that Claimant was disabled and unable to work limited weight. (R. 16.) He explained that Dr. Berry's opinion was inconsistent with other evidence in the record, for instance an examination in March 2006 showed that

Claimant had no spinal tenderness, negative straight leg raising, no radiculopathy, and normal range of motion of the back. (Id.) In addition, the ALJ noted that Dr. Berry failed to provide any findings of examinations or the MRI scan reports on which his opinion was based. Finally, the ALJ also explained that although Dr. Berry referenced records from Dr. Huffmon, Claimant had not submitted any records from Dr. Huffmon. (Id.)

The ALJ was under no duty to accord any heightened value to Dr. Berry's opinion regarding Claimant's ability to work. 20 C.F.R. §§ 404.1527(e)(3)(, 416.927(e)(3). Instead, he was required merely to evaluate the opinion, along with the other evidence in the record to determine its supportability. S.S.R. 96-5p. Here, the ALJ did just that, by noting other citations in the record that showed that Claimant had less severe spinal, back and leg problems than those suggested by Dr. Berry. (R. 14-16.) The fact that the ALJ decided to afford less weight to Dr. Berry's opinion because it was not supported by medical records as they had not been submitted, does not make his consideration of Dr. Berry's opinion erroneous. Accordingly, the ALJ appropriately credited Dr. Berry's opinion in making his RFC determination.

### D. The ALJ Fully Developed the Record

Finally, Claimant argues that the ALJ failed to fully develop the record. At the May 10, 2007 hearing, Claimant testified about tests and treatment that he received from Dr. Berry and Dr. Huffmon. (R. 216, 218, 220, 221-22, 225-26, 234-35, 236-38.) The ALJ requested Dr. Berry's and Dr. Huffmon's records. (R. 238.) Claimant's counsel told the ALJ that he would provide the medical records. (Id.) In order to ensure that he had time to obtain the records, Claimant's counsel requested that the record

13

remain open for four weeks. (R. 238-39.) The ALJ agreed to keep the record open for four weeks. (R. 239.) The ALJ waited four months and eleven days after the hearing before issuing his decision. (R. 9-18.) In his decision, the ALJ noted that a report from Dr. Berry had been submitted but that no records from Dr. Huffmon had been provided. (R. 9.) The ALJ drew a negative inference from the lack of medical documentation from Dr. Huffmon and concluded that "had Dr. Huffmon's records been submitted they would not have supported disability." (Id.)

An ALJ does have a duty to develop the record. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (noting that the Commissioner has the duty to explore all relevant facts and inquire into issues necessary for adequate development of the record). However, Claimant still has the responsibility to provide medical evidence supportive of his claim. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) and 20 C.F.R. §§ 404.1512(a), 404.1512(c).

Although Claimant failed to provide detailed medical records from Dr. Berry and any records from Dr. Huffmon, he did not complain during the more than four months that the decision was pending that he was having difficulty obtaining these documents. He did not ask for the documents to be subpoenaed or for other assistance. Moreover, although Claimant made some general contentions of error in his October 4, 2007 request for review of the ALJ's decision, he did not allege that the decision had been made on an incomplete record, and did not request assistance in obtaining additional records. (R. 5.) Indeed, even after the Appeals Council advised Claimant that more

14

evidence could be submitted (R. 6), Claimant did not submit additional records and did not request assistance to obtain additional records.

Moreover, the ALJ developed the record through eliciting testimony from Claimant. Questioning witnesses is an appropriate means by which an ALJ may develop the record. 20 C.F.R. §§ 404.944, 404.950(e). At the hearing, Claimant testified about his neck pain and limited mobility, his back pain, and the medication that he takes for these problems. (R. 217-19, 221.) Claimant stated that the medication that he takes helps to take the pain away. (R. 222); see Gross v. Heckler, 785 F.2d 1163, 1165-66 (4th Cir. 1986) (noting that symptoms controlled by medication or treatment are not disabling). In addition, Claimant testified that he declined surgery and was doing physical therapy to help his back which helped sometimes and at other times did not. (R. 225.) Therefore, the ALJ had sufficient evidence from which to determine whether Claimant was disabled and the fact that he drew a negative inference based on the lack of medical records from Dr. Huffmon does not constitute reversible error. See Brame v. Astrue, No. 5:08-CV-547-D, 2009 WL 3462172, at *11-12 (E.D.N.C. Oct. 26, 2009) (concluding that an ALJ properly developed the record even though the ALJ did not request additional medical records because the claimant had ample opportunity to provide the records but failed to do so and because the ALJ developed the record through witness testimony).

Accordingly, by considering Claimant's own testimony and the medical evidence in the record, the ALJ had sufficient information from which to make a decision regarding disability and did not err by failing to develop the record.

15

## CONCLUSION

The undersigned **RECOMMENDS** that Claimant's motion for judgment on the pleadings be **DENIED**, and that the Commissioner's motion for judgment on the pleadings be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days after receiving it to file written objections. Failure to file timely written objections bars or may bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

This the 24th day of March, 2010.

DAVID W. DANIEL
United States Magistrate Judge